# Exhibit 1

**MINNESOTA**

OFFICE OF
ADMINISTRATIVE
HEARINGS

PO Box 64620          PH  (651) 361-7900
Saint Paul, MN 55164-0620     TTY  (651) 361-7878
mn.gov/oah          FAX  (651) 539-0310

March 17, 2017

<u>**VIA E-FILING ONLY**</u>
Dr. Brenda Cassellius, Commissioner
ATTN: Pamela Hinze
Department of Education
1500 Highway 36 West
Roseville, MN  55113-4266
Pamela.Hinze@state.mn.us

> Re:  *In the Matter of Osseo School District v. M.N.B.*
>      OAH   82-1300-34084; MDE 17-011-H

Dear Commissioner Cassellius:

Enclosed and served upon you please find the Administrative Law Judge's **ORDER GRANTING STUDENT'S MOTION FOR SUMMARY DISPOSITION AND DENYING DISTRICT'S MOTION FOR SUMMARY DISPOSITION** in the above-entitled matter.  The Report together with the official record will be sent to you under separate cover.

If you have any questions, please contact my legal assistant Kendra McCausland at (651) 361-7870 or kendra.mccausland@state.mn.us, or facsimile at (651) 539-0310.

Sincerely,

BARBARA J. CASE
Administrative Law Judge

BJC:klm
Enclosure
cc:    Roseann Schreifels and Laura Tubbs Booth
       Daniel J. Stewart

STATE OF MINNESOTA
OFFICE OF ADMINISTRATIVE HEARINGS
PO BOX 64620
600 NORTH ROBERT STREET
ST. PAUL, MN 55164-0620

## CERTIFICATE OF SERVICE

| In the Matter of Osseo School District v. M.N.B. | OAH Docket No.:<br>82-1300-34084 |
|---|---|

Kendra McCausland certifies that on March 17, 2017, she served a true and correct **ORDER GRANTING STUDENT'S MOTION FOR SUMMARY DISPOSITION AND DENYING DISTRICT'S MOTION FOR SUMMARY DISPOSITION** by courier service, by placing it in the United States mail with postage prepaid, or by electronic mail, as indicated below, addressed to the following individuals:

**VIA E-FILING ONLY**
Dr. Brenda Cassellius, Commissioner
ATTN: Pamela Hinze
Department of Education
1500 Highway 36 West
Roseville, MN  55113-4266
Pamela.Hinze@state.mn.us

**VIA EMAIL ONLY**
Roseann Schreifels
Laura Booth
Booth Law Group LLC
10520 Wayzata Blvd Ste 200
Minnetonka, MN  55305
rschreifels@boothlawgroup.com
lbooth@boothlawgroup.com
EFehlandt@boothlawgroup.com

**VIA EMAIL ONLY**
Daniel J. Stewart
Mid-Minnesota Legal Aid
Minnesota Disability Law Center
430 N First Ave Ste 300
Minneapolis, MN  55401
djstewart@mylegalaid.org

**THIS DOCUMENT CONTAINS**                           OAH 82-1300-34084
**NOT PUBLIC DATA**                                           MDE 17-011-H

STATE OF MINNESOTA
OFFICE OF ADMINISTRATIVE HEARINGS

FOR THE DEPARTMENT OF EDUCATION

In the Matter of Osseo Public School District,            **ORDER GRANTING**
Independent School District No. 279,             **STUDENT'S MOTION FOR SUMMARY**
                                                                     **DISPOSITION AND**
v.                                                          **DENYING DISTRICT'S MOTION FOR**
                                                                   **SUMMARY DISPOSITION**
M.N.B. and her parent, Jennifer Bridgeman.

       This matter is pending before Administrative Law Judge Barbara J. Case pursuant to a request for a special education due process hearing received by the Department of Education (Department) on December 19, 2016.

       Roseann Schreifels and Laura Booth, Booth Law Group, L.L.C., appeared on behalf of the Osseo Public School District, Independent School District No. 279 (District).  Daniel J. Stewart, Minnesota Disability Law Center/Mid-Minnesota Legal Aid, appeared on behalf of M.N.B. (the Student) and her parent, Jennifer Bridgeman (the Parent).

       Both parties filed motions for summary disposition on January 30, 2017.  Both parties filed responses to the motions on February 10, 2017, and the record closed.

       Based upon all of the files and proceedings herein, and for the reasons contained in the Memorandum attached hereto,

       **IT IS HEREBY ORDERED**:

       1.       The Student's motion for an order finding the District responsible for transporting the Student is **GRANTED**.

       2.       The Student's motion seeking reimbursement for the Parent's transportation expenses incurred since October 17, 2016, is **GRANTED**.

       3.       If the parties are unable to reach an agreement regarding the amount of reimbursement, on or before **April 7, 2017** either party may bring a motion requesting the Administrative Law Judge to address the dispute.

    4.    The District's Motion for Summary Disposition is **DENIED**.

Dated: March 17, 2017

_(signature)_ Barbara Case

BARBARA J. CASE
Administrative Law Judge

## MEMORANDUM

## I.    Procedural Background

The Student qualifies for special education and has an Individual Education Plan (IEP) which identifies special transportation as a need.[1] The Student's resident school district is Independent School District No. 727, but the Student is enrolled in the District pursuant to the Minnesota open enrollment statute.[2]   In order to receive special education services and instruction, the Student attends school at North Education Center (NEC), a level IV school in Intermediate School District No. 287.[3]   The Parent requested she be reimbursed for driving the Student from their home to NEC.[4]   The District offered to provide mileage reimbursement from the District's boundary to NEC, but not for transportation between the Student's home and the District's boundary.[5]

On November 1, 2016, the Parent filed a special education complaint against the District with the Department.[6]   On November 15, 2016, the District submitted a response to the complaint denying any alleged violations of federal or state special education law.[7]

On December 19, 2016, the District filed a due process hearing request with the Department.[8]   On December 22, 2016, the Department issued an abeyance letter notifying the parties that the November 1, 2016, complaint would be held in abeyance pursuant to 34 C.F.R. 300.152(c) (2016) because the issue raised in the Parent's special education complaint is the same issue raised in the District's due process hearing request.[9] By Order dated January 19, 2017, the Administrative Law Judge

---

[1] The Student's current IEP is a stay-put IEP developed in October 2015 by her IEP team at Karner Blue Education Center a program in Northeast Metro Intermediate School District No. 916. Big Lake School District placed Student at that program through the IEP team process. The IEP states that "[Student] will be transported individually to and from school. [Student] struggles with other students who are in close proximity to her that display vocalizations, which can be really frustrating to her." District's Mot. for Summ. J. (District's Mot.) at Ex. 5 (Jan. 30, 2017).
[2] *Id.* at Ex. 2.
[3] *Id.* at Ex. 3.
[4] *Id.* at Ex. 12.
[5] *Id.*
[6] *Id.* at Ex. 23.
[7] *Id.* at Ex. 24.
[8] Due Process Hearing Request (Dec. 19, 2016).
[9] District's Mot. at Ex. 25.

allowed the parties until January 30, 2017, to serve and file motions for summary disposition, with responsive memoranda due February 10, 2017, and an order on the motions due by March 20, 2017.[10]

The Student argues that the Individuals with Disabilities Education Improvement Act (IDEA)[11] requires a nonresident district to provide transportation to and from the Student's home to the nonresident district placement because the Student has specialized transportation written as a requirement in her IEP.[12]  The Student seeks a summary disposition order dismissing the District's due process hearing request, ordering the District to assume responsibility for the Student's transportation across district boundaries, and ordering reimbursement to the Student's parents for their transportation expenses.[13]

The District contends that the Parent is responsible for transporting the Student to the border of the nonresident district. The District argues that requiring the Parent to transport the Student to the nonresident border is permissible because the IDEA does not require specialized transportation outside of a District's regular transportation area when the placement is made because of parental preference rather than the student's need.[14] The District seeks an order stating that: providing transportation as a related service is required only between the District's boundary and the Student's school; and the District did not violate the IDEA or state special education law by refusing the Parent's request for transportation from the Student's home to the District's boundary.[15]

## II.    Statutory Background

This action arises under IDEA and Minnesota's Enrollment Options Program law (Open Enrollment Act).[16] IDEA's purpose is to "ensure that all children with disabilities have available to them a free appropriate public education (FAPE) that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment and independent living."[17] Under IDEA, each state must have in effect policies and procedures to ensure that all children with disabilities residing in the state are identified, located, evaluated, and receive the special education services they need.[18] In Minnesota, each school district bears a statutory obligation to ensure compliance with IDEA for each child who resides in the district.[19]

---

[10] Second Prehearing Order (Jan. 19, 2017).
[11] 20 U.S.C. § 1415 *et. seq.* 2004.
[12] Student's Mot. for Summ. Disposition (Student's Mot.) at 1 (Jan. 30, 2017).
[13] *Id.*
[14] District's Mot. at 9-10.
[15] *Id.*
[16] Minn. Stat. § 124D.03 (2016).
[17] 20 U.S.C. § 1400(d) (2012).
[18] 34 C.F.R. § 300.111 (2016).
[19] Minn. Stat. § 125A.027 (2016). There are many possible permutations of the manner in which services are delivered, but the primary state system used to assure compliance with IDEA is that each local school district is responsible to ensure IDEA's requirements are met for any child residing in the district.

Separate from IDEA, Minnesota's Open Enrollment Act permits, subject to certain limitations,[20] families of all children to open enroll their children out of their resident school district and into any other school district (the nonresident district). In this case, the Student's resident district is Big Lake, but she has open enrolled into the Osseo school district, which is now her nonresident district.

The question raised is whether the nonresident school district is responsible for providing transportation between the Student's home and her school[21] because the Student has specialized transportation identified in her IEP as a necessary related service.[22] Neither IDEA nor its regulations directly address parent preference programs that allow parents to choose to enroll their children in nonresident districts or charter schools. Neither party disputes that when a student open enrolls the nonresident district becomes the responsible school district in every respect, including for provision of special education services.[23]

While Minnesota's Open Enrollment Act addresses the transportation obligations of all concerned parties, it does not separately or directly address the provision of special education transportation when required in a student's IEP.  If requested by the parent, the Open Enrollment Act requires a nonresident school district to transport an open enrolled student from the nonresident district's border to the school into which the student is open enrolled.[24] The Open Enrollment Act, by reference to Minnesota's statute on school district transportation, makes transportation of the nonresident student by the nonresident district, within the resident district boundaries, permissive.[25] The Open Enrollment statute is silent on who or what entity is responsible for transporting an open enrolled student to the border of the nonresident district. It simply states that the resident district need not provide transportation "between the pupil's residence and the border of the nonresident district."[26] However, it specifically permits reimbursement to

---

[20] *See* Minn. Stat. § 124D.03, subds. 1-3.  For example, pupils must submit an initial application to open enroll by January 15, school boards may impose certain prescribed limits on the number of students who may open enroll, and school boards must adopt specific standards for acceptance and rejection of applications.

[21] An intermediate district is a cooperative program created between certain districts for the purpose of offering, among other services, special education programs. Minn. Stat. § 136D.01 (2016). Neither party to this case argues that the nonresident district is not responsible for transportation to the intermediate district.

[22] 34 C.F.R. § 300.34(a). Related services are supportive services required to assist a child with a disability to benefit from special education. Transportation to and from school is a related service that must be included in a student's IEP if the service is required in order for the student to benefit from special education.

[23] There are myriad formulas for how funding and costs are received and allocated between the state and the involved districts. Though important these state funding statutes are not relevant to the question in this case. *See, e.g.,* Minn. Stat. § 123B.92 (2016).

[24] Minn. Stat. § 124D.03, subd. 8.

[25] Minn. Stat. § 123B.88, subd. 6 (2016), ("If requested, a nonresident district shall transport a nonresident pupil within its borders and may transport a nonresident pupil within the pupil's resident district. If a nonresident district decides to transport a nonresident pupil within the pupil's resident district, the nonresident district must notify the pupil's resident district of its decision, in writing, prior to providing transportation.").

[26] Minn. Stat. § 124D.03, subd. 8.

low-income parents for the cost of transporting their open enrolled student to the nonresident district border.[27]

Under IDEA, when an IEP identifies that a student needs special transportation in order to benefit from special education, the related service of transportation must be provided.[28] IDEA does not directly address situations where the student has open enrolled into a nonresident district. Therefore, the question in this case is whether the Student, who requires specialized transportation pursuant to her IEP and has open enrolled pursuant to Minnesota's Open Enrollment Program, is entitled to publically-funded transportation from her home to the District into which she has open enrolled.

## III.   Undisputed Facts

The Student is a resident of Big Lake, Minnesota, where she resides with her parents.[29] The Student's "resident" school district is Big Lake Schools, Independent School District No. 727 (Big Lake District).[30] The Student is eligible for special education services and has an IEP.[31] The Student is a fifth-grader who currently attends school at North Education Center, a federal setting IV special education program within Intermediate School District No. 287 (Intermediate District 287).[32] The Student receives special education services under eligibility for Emotional Behavioral Disorder (EBD) and Other Health Disorder (OHD).[33]

For third and fourth grades, the Student attended Karner Blue Education Center, a federal setting for special education placement in Northeast Metro Intermediate School District No. 916 (Intermediate District 916). The Big Lake District placed the Student in the federal setting IV program at Karner Blue Education Center through the IEP team process.[34]

---

[27] *Id.*

[28] *See* 20 U.S.C. § 1401; 34 C.F.R. § 300.17 (2016). FAPE requires that special education and related services provided at public expense meet the standards of the state educational agency, including an appropriate education, and operate in conformity with the student's IEP.

[29] District's Mot. at Ex. 1.

[30] *Id.* at Ex. 2.

[31] *Id.* at Ex. 4.

[32] *Id.* The term "federal setting VI" is not found in the IDEA. The term is part of Minnesota's nomenclature that refers to the degree to which students with disabilities spend their school day with non-disabled peers. A Level IV placement is restrictive in the sense the sense that students spend little time with non-disabled peers.

[33] *Id.* at 19.

[34] *Id.* at Ex. 6.

The Student's current IEP is a stay-put IEP[35] developed in October 2015 by her IEP team at Karner Blue Education Center.[36] The IEP states that "[Student] will be transported individually to and from school. [Student] struggles with other students who are in close proximity to her that display vocalizations, which can be really frustrating to her."[37] During the 2015-2016 school year, the Student was transported to and from home and Karner Blue Education Center in the Parent's vehicle and the Parent was reimbursed for mileage expenses pursuant to a contract between the Big Lake District and the Parent.[38]

The District participates in Minnesota's Open Enrollment Program.[39] On September 8, 2016 the Parent completed an application for the Student to open enroll and was approved for open enrollment by the District.[40] At a September 22, 2016 IEP meeting convened by the District, the Parent verbally agreed to a federal setting IV placement for the Student.[41] The District communicated its open enrollment transportation policy to the Parent and explained that it would provide transportation for the Student from the District's boundary to NEC.[42] NEC is a level IV program run by Intermediate District 287.[43]   The Parent indicated a desire to drive the Student to and from school.[44] The District agreed to have the Parent transport the Student and was willing to provide mileage reimbursement to the Parent for driving from the District's boundary to NEC.[45] The Student began attending NEC in October 2016 on a partial day schedule, and transitioned to attending full-time on October 24, 2016.[46] The District offered the Parent a contract for mileage reimbursement from the District border to NEC.[47] The District and the Parent did not reach an agreement regarding reimbursement.[48]

During the school year, District administrators began a process of examining the District's practice regarding transportation of open enrolled students.[49] At that time, open enrolled general education students and open enrolled special education students without transportation provisions included in their IEPs came to their designated bus

---

[35] Stay-put means the student remains in the last agreed upon placement. "The Supreme Court has held that Section 1415(j) is 'unequivocal,' stating 'plainly' that a school board *shall not* change the current educational placement unless or until it can agree on an alternative placement with the parents, or until the issue is resolved through the administrative hearing process." *CP v. Leon Cnty. Sch. Bd. Florida,* 483 F.3d 1151, 1156 (11th Cir. 2007) (citing *Honig v. Doe,* 484 U.S. 305, 323, 108 S. Ct. 592, 604, 98 L.Ed.2d 686 (1988) (quoting 20 U.S.C. § 1415(e)(3) (now codified at 20 U.S.C. § 1415(j))).
[36] *Id.* at Ex. 5.
[37] *Id.* at 3.
[38] *Id.* at Ex. 6.
[39] District's Mot. at Ex. 2.
[40] *Id.*
[41] *Id.* at Ex. 12.
[42] *Id.*
[43] *Id.* at Ex. 19.
[44] *Id.* at Ex. 12.
[45] *Id.*
[46] *Id.* at Ex. 18.
[47] *Id.* at Ex. 16.
[48] *Id.* at Ex. 22.
[49] *Id.* at Exs. 7-8, Affidavit of Roseann Schreifels (Schreifels Aff.) ¶ 3 (Jan. 30, 2017).

stop located within the District's boundaries and closest to the students' homes.[50] Students' families were responsible to get their open enrolled student to the designated bus stop. The District transported the students from the District's bus stop, located within the District's boundary, to the child's school.[51] However, if a student had an IEP including transportation as a necessary, related service, the District transported from the student's home[52] in their resident district to the child's school within the District.[53]

In 2015, the District determined that its transportation policy was resulting in longer bus rides for resident students on traditional bus routes and increased transportation costs, even though some portion of the costs were reimbursed by the state.[54] On May 13, 2015, the District decided to move forward with a new protocol for open enrollment transportation. Under the new protocol, all open enrolled families would be responsible to get their student to a bus stop within the District's boundary. Students requiring specialized transportation as a related service within their IEP would receive transportation within the District boundaries only.[55] In order to give families time to make decisions based on the new policy, the District on July 31, 2015, sent letters to open enrolled families to notify them that the change in the District's open enrollment transportation would begin in the 2016-17 school year.[56]

## IV.   Legal Standard for Summary Disposition

Summary disposition is the administrative law equivalent of summary judgment. Summary disposition is appropriate where there is no genuine issues of material fact and a determination of the applicable law will resolve the controversy.[57] The Office of Administrative Hearings has generally followed the summary judgment standards developed in the district courts when considering motions for summary disposition in contested case matters.[58]

A motion for summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."[59]  Neither party in this case argues that there are any material facts in dispute.

---

[50] District's Mot. at Exs. 7-8; Schreifels Aff. ¶ 3.
[51] District's Mot. at Exs. 7-8; Schreifels Aff. ¶ 3.
[52] The District does not always pick up directly at the child's home.  Rather, depending on the child's needs, they may pick up at a bus stop near the child's home.
[53] District's Mot. at Exs. 7-8; Schreifels Aff. ¶ 3.
[54] District's Mot. at Ex. 8.
[55] District's Mot. at Ex. 8.
[56] *Id.*
[57] *See Sauter v. Sauter,* 70 N.W.2d 351, 353 (Minn. 1955); *Louwagie v. Witco Chemical Corp.*, 378 N.W.2d 63, 66 (Minn. Ct. App. 1985); *Gaspord v. Washington Cnty Planning Comm'n*, 252 N.W.2d 590, 590-591 (Minn. 1977); Minn. R. 1400.5500(K) (2015); Minn. R. Civ. P. 56.03.
[58] *See* Minn. R. 1400.6600 (2015).
[59] Minn. R. Civ. P. 56.03; *see also Fabio v. Bellomo*, 504 N.W. 2d 758, 761 (Minn. 1993).

## V.    Positions of the Parties

### A.    The District's Position

The District argues that when a Minnesota parent enrolls a special needs child in a district under the Open Enrollment Act, the related service of transportation within the child's IEP does not include transportation from the student's residence to the district border. The District relies on Minnesota's statute governing student transportation, which states that:

> [I]f requested, a nonresident district shall transport a nonresident pupil within its borders and may transport a nonresident pupil within the pupil's resident district. If a nonresident district decides to transport a nonresident pupil within the pupil's resident district, the nonresident district must notify the pupil's resident district of its decision, in writing, prior to providing transportation.[60]

The District agrees that Minn. Rule 3525.0800, subp. 8 (2015), makes the providing district responsible for an appropriate educational program when a special needs child is open enrolled through Minnesota's educational choice options.[61] The District agrees that it is responsible for providing transportation as a related service to an open enrolled student who requires special transportation in order to receive a FAPE. However, the District argues that it is not a violation of IDEA for a school district to apply Minnesota's Open Enrollment Act equally to all parents by making them transport their open enrolled child to the border of the nonresident district without regard to whether their child has a disability qualifying them for special education.

The District cites *Fick ex rel. Fick v. Sioux Falls Sch. Dist. 49-5*, 337 F.3d 968 (8th Cir. 2003), and *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir. 1999), as controlling in this case. Both cases concern a school district's denial of transportation to students enrolling outside of their assigned school area. In *Timothy H.*, a case not decided under IDEA but instead under Section 504 of the Rehabilitation Act of 1973,[62] the Eighth Circuit found that the school board did not unlawfully discriminate when "the school district require[d] that all students, regardless of their personal transportation situation, provide their own transportation to their school of choice as a condition of participation in the intra-district transfer program."[63] In *Fick,* the Eighth Circuit cited *Timothy H.* and explained that "a school district may apply a facially neutral transportation policy to a disabled child without violating the law when the request for a deviation from the policy is not based on the child's educational needs, but

---

[60] Minn. Stat. § 123B.88, subd. 6. The District also relies on the language of Minnesota's Enrollment Options Act, which states that "if requested by the parent of a pupil, the nonresident district shall provide transportation within its boundaries. The resident district is not required to provide or pay for transportation between the pupil's residence and the border of the district." Minn. Stat. § 124D.03, subd. 8.

[61] District's Resp. Mem. in Supp. of Mot. for Summ. J. (District's Resp.) at 4 (Feb. 10, 2017).

[62] 29 U.S.C. § 794 (1999).

[63] *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 972 (8th Cir. 1999).

on the parents' convenience or preference."[64]  The District argues the cases are exactly on point with the present case.

The District also believes that a guidance letter issued by the US Department of Education's Office of Special Education and Rehabilitative Services (OSERS) in 1990, *Letter to Lutjeharms*,[65] is not relevant because it did not provide an interpretation of the term "to and from school."[66] Furthermore, the District argues that the guidance letter is not entitled to deference because the letter was not issued at the same time as IDEA's regulations on the related service of special education related transportation and provides no analysis or independent reasoning regarding how the regulatory term "transportation" could be interpreted in the context of open enrollment to mean transportation to and from school.[67]

## B.    The Student's Position

The Student argues that the District is responsible for implementing her IEP, which requires specialized transportation as a related service.  The Student asserts that this case mirrors the circumstances addressed by OSERS in the 1990 guidance letter, which is controlling here. In the guidance letter, OSERS applied IDEA and Section 504 to answer questions about Nebraska's open enrollment act. In the letter, OSERS takes the positon that "under inter-district choice programs, states must ensure that the rights guaranteed to children with handicaps and their parents…are not diminished by virtue of a child's participation in the [open enrollment] program."[68]

The Student also cites *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F. 2d 1153 (5th Cir. 1986), for the proposition that specialized transportation must be provided across district boundaries if the student's IEP requires it.[69] Finally, the Student points to the Department's position that transportation is required for open enrolled students who have specialized transportation in their IEPs.[70]

## VI.    Legal Analysis

## A.    The Open Enrollment Statute

The plain language of the Minnesota Open Enrollment Act requires a school district into which any student open enrolls to transport the student within the district's borders.[71]  The plain language of the statute also makes permissive the district's

---

[64] *Fick ex rel. Fick v. Sioux Falls Sch. Dist. 49-5*, 337 F.3d 968, 970 (8th Cir. 2003).
[65] Letter to Lutjeharms, 16 IDELR 554 (OSEP 1990).
[66] District's Resp. at 4.
[67] *Id.* at 5.
[68] Letter to Lutjeharms, 16 IDELR 554 at 3 (OSEP 1990).
[69] *Alamo Heights Indep. Sch. Dist. V. State Bd. Of Educ.*, 790 F. 2d 1153, 1159 (5th Cir. 1986).
[70] Student's Resp. to District's Mot. for Summ. J. (Student's Resp.) at 3 (Feb. 10, 2017).
[71] Minn. Stat. § 123B.88, subd. 6 ("If requested, a nonresident district shall transport a nonresident pupil within its borders….").

decision of whether to transport a student outside its boundaries to and/or from the student's home.[72]

The Minnesota Supreme Court instructs that "when interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous."[73] The Open Enrollment Act does not direct a district to transport, or impede a district from transporting, a student who requires special transportation in order to receive FAPE. The statute is simply silent on the topic. Neither party argues that the Open Enrollment Act controls the decision in this case.  Instead, both argue that different interpretations of IDEA compel their desired outcome of this matter.

## B.    The Eighth Circuit Cases Relied on by the District

The Eighth Circuit has twice addressed the issue of whether school districts' policies of refusing specialized transportation to students with disabilities who wish to participate in intra-transfer programs impermissibly limits the students' opportunity to participate in the programs.[74] The Eighth Circuit reached the same conclusion in both cases, finding that "a school district may apply a facially neutral transportation policy to a disabled child without violating the law when the request for a deviation from the policy is not based on the child's educational needs, but on the parents' convenience or preference."[75]  A school district's ability to choose the school attended by a student with special needs within the district without violating IDEA is a rule of long-standing.[76] If the Eighth Circuit cases answered the question posed in this case, they would control the outcome here.  Neither case, however, answers the question of whether the school district into which a child open enrolls must provide special transportation if expressly identified as a student need in an enforceable IEP.

There are two distinct differences between the Eighth Circuit cases and the case at hand. First, the Eighth Circuit cases concern a local school district's well-established right to choose among placement options for a special needs student within a district as long as each option offers a FAPE. There may be as many permutations of intra-district options as there are school districts. Second, there is a qualitative difference between parents asking to direct their local school district's logistical decisions, as would have been the case in *Timothy H.* and *Fick*, and a parent choosing to abandon their resident school district in favor of another district as allowed by Minnesota's Open Enrollment Act.   Neither party provided any case law directly on point and addressing the

---

[72] *Id.,* subd. 8.

[73] *American Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn. 2000).

[74] *Timothy H.,* 178 F. 3d at 968; *Fick,* 337 F. 3d at 968. *Timothy H.* was decided under Section 504, while *Fick* was decided under IDEA.

[75] *Fick,* 337 F.3d at 970.

[76] *Schuldt v. Mankato I.S.D. No. 77,* 937 F.2d 1357 (8th Cir. 1991) ("The act and the regulations promulgated thereunder give the school district discretion in selecting the location where it will educate a handicapped child."). When *Schuldt* was decided, IDEA contained language that students should attend the appropriate school regardless of a disability, but this language was removed in subsequent iterations of IDEA.

intersection of the IDEA with an expanded state law right for families to choose their child's school district.

### C.    OSER's Policy Letter Relied on by the Student

The only authority directly on point is the Office of Special Education and Rehabilitative Service's[77] (OSERS) 1990 guidance letter relied on by the Student in this case. The letter addresses the responsibility of a nonresident district under Nebraska's open enrollment law:

> [T]he choice district must provide, or ensure provision of, necessary transportation to children with handicaps, where such transportation is a related service that is "required to assist a handicapped child to benefit from special education. In other words, if a child is entitled to transportation as a related service, the school district responsible for FAPE…must provide, or ensure the provision of, transportation. However, if transportation is not required as a related service, such transportation need not be provided to the child with handicaps, if nonhandicapped children do not receive this service.[78]

The District argues that the letter is not applicable in this case because it addresses a different jurisdiction (Nebraska) and is not binding authority.[79] Moreover, the District argues that it is not refusing the Student transportation within its borders.[80] It appears, nonetheless, that the *Lutjeharms* letter has provided clear guidance to the field on the issue because, while the vast majority of states have open enrollment option statutes,[81] neither party was able to find any federal cases litigated on this question since the *Lutjeharms* letter was issued. Furthermore, in neither the 1997 or 2004 reauthorizations of the IDEA did Congress find it necessary to address, correct or clarify OSEP's interpretation of what IDEA required in open enrollment situations.

More specifically, the District argues that the 1990 OSER guidance letter should not be viewed as authoritative in this matter because Congress has instructed OSEP that it "may not issue policy letters or other statements…that…establish a rule that is required for compliance with, and eligibility under, this chapter without…" following rule making procedures.[82] Congress has further instructed OSEP that "it may not issue policy letters or other statements that…establish a rule that is required for compliance with…this chapter without following the requirements of section 553 of Title 5."[83]  In addition, "any written response…regarding a policy, question, or interpretation…shall include an explanation in the written response that (1) such a response is not legally

---

[77] 34 C.F.R. §§ 300.01-.818 (2016). OSERS administers the Office of Special Education Programs (OSEP) among other programs in the Department of Education.
[78] Letter to Lutjeharms, 16 IDELR 554 at 4 (OSEP 1990).
[79] District's Resp. at 5.
[80] *Id.*
[81] District's Mot. at Ex. 26 (Education Commission of the States survey).
[82] 20 U.S.C.A. § 1406(d).
[83] *Id.*

binding; (2) when required, such a response is issued in compliance with the requirements of section 553 of title 5; and (3) such response represents the interpretation by the Department of Education of the applicable requirements in the context of the specific facts presents."[84] OSEP is required to publish, on a quarterly basis in the Federal Register, and widely disseminate to interested entities…a list of correspondence from the Department of Education received by individuals during the previous quarter that describes the interpretations of the Department of Education of this chapter…."[85]

OSEP is the agency charged with the responsibility for administering the IDEA.[86] Review of an agency interpretation begins with an analysis of the text of the statute being interpreted.[87] If the text of the statute does not address an issue or is ambiguous, then Congress left a gap for the agency to fill.[88]  The 1990 OSEP guidance letter fills such a gap because IDEA does not address state open enrollment options but does provide that transportation is a component of FAPE for some students. The intersection of the open enrollment state laws and FAPE leaves an ambiguity. OSEP did not create a rule in the 1990 guidance letter, but instead clarified how IDEA's rule regarding transportation should be applied to open enrollment situations. "The power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."[89] "Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."[90]  An executive department's construction of a statutory scheme it is entrusted to administer is accorded considerable weight.[91]

As the District points out, an "agency's interpretation of the statute it is charged with implementing may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires."[92] "The amount of deference afforded to an agency interpretation…turns on several factors, including:  (1) the thoroughness of the agency's consideration, (2) the validity of its reasoning, (3) consistency with earlier and later pronouncements, (4) formality, (5) expertise of the agency, and (6) all those other factors which give it power to persuade, if lacking power to control."[93] The D.C. Circuit Court of Appeals applied IDEA's requirements and found that construction of the

---

[84] 20 U.S.C.A. § 1406(e).

[85] *Id.*

[86] 20 U.S.C. § 1402(a).

[87] *Draper v. Colvin*, 779 F.3d 556, 560 (8th Cir. 2015).

[88] *Id.*

[89] *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 2782 (1984) (quotation omitted).

[90] *Id.* at 844, 104 S. Ct. at 2782.

[91] *Id.*

[92] *Draper*, 779 F.3d at 560.

[93] *Id.*

Department of Education's regulations is governed by 5 U.S.C. § 706(2)(A), which requires courts to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[94]

The *Lutjeharms* letter is not defective under these tests and so is authoritative on the question presented in this case. The agency's analysis in the letter considers IDEA and the regulations regarding FAPE-related services and transportation. The reasoning is valid because it considers the obligations of states and school districts, permits states to enact laws reallocating the district responsible for FAPE for a child, and reasonably concludes that when a state allows a reallocation of responsibility it must assure the student does not lose any IDEA entitlements when exercising the right to choose a different school district.[95] The letter is also consistent with other pronouncements from OSEP.[96] Furthermore, IDEA authorizes OSEP to monitor, enforce, and provide technical assistance to the states on the implementation of IDEA.[97]

### D.    Burden Analysis

Both parties make arguments regarding the relative burden on the District to provide transportation to open enrolled special education students. The arguments are not applicable in this case because they derive from language in Section 504 of the Rehabilitation Act, which is not at issue in this matter.  IDEA contains no similar language.  Section 504 and IDEA have both been cited by parties to special education transportation cases over the years.  Indeed, OSEP cites both laws in the 1990 *Lutjeharms* guidance letter. As the Supreme Court has recently discussed, confusion currently exists because of the overlapping rights found in 504 of the Rehabilitation Act, Title II of the ADA, and IDEA.[98]

However, the hearing officer's "role, under the IDEA, is to enforce the child's 'substantive right' to a FAPE. And that is all."[99] "If that accommodation is needed to fulfill the IDEA's FAPE requirement, the hearing officer must order relief. But if it is not, he cannot--even though the dispute is between a child with a disability and the school she attends."[100] The relative burden question cannot be addressed by the hearing officer as it is derived from a federal law not within the hearing officer's authority.

---

[94] *Petit v. U.S. Dept. of Educ.,* 675 F.3d 769, 778 (D.C. Cir. 2012) (quotations omitted).

[95] *Lutjeharms* at 3.

[96] *See* Letter to Tatel, 16 IDELR 349 (OSEP 1990) ("because [IDEA] does not state that the ultimate responsibility for providing FAPE lies with the LEA for a child with handicap's district of residence…. However, because [IDEA] does not require that LEA responsibility for FAPE be allocated according to district of residence, if a state chooses to allocate district responsibility for FAPE based on parental choice, that is not inconsistent with [IDEA] providing that the effect of this will not result in the denial of any rights guaranteed by [IDEA]."); Letter to Evans, 17 IDELR 836 (OSEP 1991) ("The Department has endorsed these inter-district programs to the extent they do not operate to deny rights guaranteed to children with disabilities and their parents by Part B and Section 504 of the Rehabilitation Act of 1073 by virtue of a child's participation in such a program.").

[97] 34 C.F.R. §§ 1416, 1417.

[98] *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743 (2017) (citation omitted).

[99] *Id.*

[100] *Id.*

### E.   State Agency Interpretation

According to the Minnesota Supreme Court, an agency's interpretation of a federal regulation is entitled to deference "when the agency is charged with enforcing and administering the regulation such that the regulation can be characterized as the agency's own regulation."[101]   IDEA's system of implementation and enforcement relies on states to apply and enforce the law such that IDEA regulations can be characterized as the Department's own regulations.[102] However, "[i]f an agency has not promulgated a regulation on a particular issue, courts should give the agency's position a lesser form of deference."[103]   Moreover, the agency's reading of a statutory text will not overcome, or substitute, for language that is "clear and capable of understanding."[104] Although the Department has not promulgated a regulation on the issue in this matter: because Minnesota's Open Enrollment Act does not address special education transportation and IDEA does not address open enrollment, the Department's interpretation should be entitled to some deference.

In 2010, the Department indicated in a field guidance document on transporting students with disabilities that nonresident districts would "transport to and from home and school if a student requires special education transportation."[105] In 2012, the Department issued a guidance document on the transportation of open enrolled students, which stated that "[i]f the enrollment options pupil has a disability and the pupil requires special transportation to get to and from school, then the enrolling district would be required to transport the pupil from the pupil's home to the education site."[106] The parties did not attach the Department guidance documents as exhibits to their motions, and as a result it is not clear in the record what authority the Department cited in the guidance documents. Nonetheless, given that OSEP provided a guidance letter in 1990, the Department's responsibility for enforcing the federal regulation includes adherence to the federal agency's interpretation of the federal law.[107]

In a 2016 administrative complaint decision, the Department interpreted IDEA to require transportation in situations like this one.[108] The Department did not determine that transportation must be provided to all students who were the subject of the complaint.   Rather the Department ordered the District to review each case to determine whether any student's IEP required special transportation. Thus, the Department

---

[101] *In re Cities of Annandale and Maple Lake NPDES/SDS Permit Issuance for the Discharge of Treated Wastewater*, 731 N.W.2d 502, 513 (Minn. 2007).
[102] 34 C.F.R. § 300.149 (the state education agency is responsible for ensuring the requirements of the IDEA are carried out and must have in place policies and procedures in place).
[103] *In re Gillette Children's Specialty Healthcare*, 867 N.W.2d 513, 522 (Minn.Ct. App. 2015).
[104] *In re Annandale NPDES/SDS Permit Issuance*, 731 N.W. 2d 502, 515 (Minn. 2007).
[105] District's Mot. Ex. 11.
[106] *Id.*
[107] 34 C.F.R. § 300.100.
[108] District's Mot. at Ex. 11.   For the complaint, the Department reviewed education records for 64 students who were open enrolled into the District.   Of those, 51 students had IEPs that included transportation services. The records all were related to the same District administrative decision to discontinue special education transportation outside of the District's borders.

determined that the District could not make a blanket pronouncement that transportation was not available to open enrolled students, but instead had to provide transportation if necessary in order for a student with an IEP to receive FAPE. In conformance with the *Lutjeharms* letter, the Department's administrative complaint decision relied upon the general IDEA requirement that transportation may be necessary for some students to receive FAPE and must be provided when it is a necessary related service.[109]

## VII.   Conclusion

The Student's current IEP is a stay-put IEP developed in October 2015 by her then IEP team at Karner Blue Education Center.[110]   That IEP includes the necessary related service of transportation between home and school. While the Student remains open enrolled in the District, the District is responsible for the Student's FAPE and therefore for implementation of the stay-put IEP. The stay-put IEP requires the Student to be transported by the Parents and that they receive reimbursement for mileage from the District.[111]

In accordance with the FAPE requirement of the IDEA as interpreted by the OSERS: the Student's Motion seeking reimbursement for Parent's transportation expenses incurred since October 17, 2016 is granted. The District's Motion for an order stating that the District did not violate the IDEA and that Student will be transported only from the District's boundary to Student's school is denied.

**B. J. C.**

---

[109] Department Complaint Decision #16-138C at conclusion #16.
[110] District's Mot. at Ex. 5.
[111] The issue raised by the parties concerned only the question of inter-district transportation and not whether the Student's transportation requirements could be met by other means.